Daniel E. Sobelsohn (CSB No. 181212)
daniel@sobelsohnlawfirm.com
THE SOBELSOHN LAW FIRM
16027 Ventura Blvd.
Suite 502
Encino, CA 91436
Phone: (818) 722-8995
Fax: (818) 530-4342

(*additional counsel on the signature page*)

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT,

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B KLUG, an individual on behalf of themselves and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> DJI TECHNOLOGY, INC., a California Corporation, <br><br> Defendants. | Case No. 2:23-cv-02762 <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff B Klug ("Plaintiff" or "Klug"), by their attorneys, make the following allegations and claims for their complaint against DJI Technology, Inc. ("DJI" or "Defendant").[1]  The following allegations are made upon information and belief, except as to allegations specifically pertaining to Plaintiff, which are made upon knowledge.

**PRELIMINARY STATEMENT**

1.      This class action is brought by Plaintiff seeking damages and equitable relief on behalf of themself and on behalf of all others similarly situated in the United States who have purchased the DJI Action 2 camera (hereinafter referred to as the "Camera" or "Cameras").

2.      The Camera, pictured below, is a highly compact wearable camera that DJI warrants and represents can be used to record in the ultra-high definition "4k" video standard at a rate of 120 fps, which means it can record 120, 4000-pixel width images, per second.



3.      The Cameras' compact size, coupled with the ability to record in 4k and do so at a high frame rate, are material specifications of the Camera that DJI charges a price premium for and integral parts of the bases of the bargain for consumers purchasing them.

---
[1] Plaintiff is an individual whose preferred pronouns are they/them/their.

**CLASS ACTION COMPLAINT**

4.      DJI's representation that the Cameras can be used to record in 4k is materially false.   The Cameras are not suitable for recording in 4k because the Cameras suffer from an inherent defect (the "Defect") that causes the Cameras to overheat and shut down after just a few minutes of recording – far less than the specified battery life of 70 to 180 minutes.[2]

5.      Once the Camera overheats, it cannot be used until it cools down, generally for at least 10 minutes, which is unacceptable for an "action" camera, and renders the Cameras unsuitable for their principal stated purpose. A consumer attempting to record in 4k/120 fps -- the advertised specification for the "action" Cameras -- would find that the camera overheats, becomes hot to the touch, and shuts down without warning after a few minutes, then needs to cool down for several minutes or longer before it can be used again for just a few minutes, before overheating again.

6.      The Defect renders the Cameras unsuitable for recording in 4k, and DJI's representations that the Cameras could record in 4k are false and misleading to reasonable consumers.

7.      Plaintiff and the proposed class have suffered damages as they paid a premium for the 4k capability that is of no practical use due to the Defect.  Plaintiff and the Class would not have purchased the Cameras or paid less for them had DJI fully disclosed the Defect.

## PARTIES

8.      Plaintiff is a resident of Columbia, Missouri, and a citizen of the State of Missouri, and utilizes the pronouns they/them/their and sometimes she/her/hers.  Plaintiff

---

[2] DJI represents that the internal battery will last for 70 minutes, while the Front Touchscreen Module will extend the battery life to 160 minutes, and the Power Module will extend the battery life to 180 minutes.

purchased a Camera (specifically, a Camera bundled with the Front Touchscreen Module), on or about July 15, 2022, from retailer Amazon.com.  Amazon.com is an authorized retailer of DJI products and even features a "DJI Store" on its platform.

9.      Plaintiff purchased the Camera to create video content in 4k and utilize it as a wearable bodycam for their personal security, given the dangers to which they are regularly exposed given their non-traditional gender expression.  The use of the Cameras as a wearable bodycam is one of the uses pictured on the DJI website, and a "Magnetic Lanyard" to allow the Camera to be used as a "bodycam" was included as an accessory with Plaintiff's Camera:



Magnetic Lanyard - Lifewear

10.      Before purchasing the Camera, Plaintiff reviewed the specifications on the Amazon.com website, DJI's introduction video, and the DJI user manual, all of which falsely represented that the Camera could record in 4k and do so at a rate of 120 frames per second.  DJI further specified a battery life of 160 minutes for the Camera package Plaintiff purchased, which reasonably implies to consumers an ability to operate for this

1  period of time. In addition, the product description on Amazon.com emphasized the 4k

2  capability, including the ability to record in 4k at a rate of 120 frames per second:

**CLASS ACTION COMPLAINT**

The product specifications on Amazon.com, as shown below, also emphasized the 4k capability as well as the long battery life and implied operating time of the Cameras:

|  | Action 2 DualScreen Combo | Action 2 Power Combo |
|---|---|---|
| Sensor | 1/1.7" CMOS | 1/1.7" CMOS |
| Lens | FOV: 155° f/2.8 | FOV: 155° f/2.8 |
| HDR Video | ✗ | ✗ |
| Photo Quality | 12 MP | 12 MP |
| Video Quality | 4K/120fps | 4K/120fps |
| Max Battery life | 160 m nutes | 180 m nutes |
| Editing | AI Ed tor | AI Ed tor |
| Subject Tracking | ✗ | ✗ |
| Stabilization | RockSteady 2.0 + Hor zonSteady | RockSteady 2.0 + Hor zonStead |
| Camera Waterproof | 10 m | 10 m |

11.    Plaintiff and other consumers quickly found that the Cameras did not comply with the specifications warranted and represented by DJI. When Plaintiff – like other purchasers of the Cameras – attempted to use the Camera to record 4k video, the Defect caused the camera to overheat and shut down in less than five minutes.

12.    The Defect renders the Camera unsuitable and unusable for Plaintiff's intended use as a 4k bodycam and for capturing "action" scenes in 4k. Had Plaintiff known that the Camera could only record video in ultra-high definition for a few minutes before shutting down and would then have to cool down for an extended time, they would not have purchased it or would not have paid as much as they did.

**CLASS ACTION COMPLAINT**

13.     Defendant DJI is a California Corporation based in Los Angeles, California.  DJI designed, manufactured, and marketed the Cameras containing the Defect and purposefully caused them to be placed into the stream of commerce within this District and throughout the United States.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(d) because the aggregate claims of the Class exceed the sum or value of $5,000,000.00, and there is diversity of citizenship between proposed class members and defendants, and over supplemental state law claims under 28 U.S.C. § 1367.

15.     Venue is proper in this District under 28 U.S.C. §1391(a)(1) and (2).  As set out below, DJI's headquarters is in Los Angeles County.  DJI conducts substantial business in this District, including conduct directed at members of the Class, including the promotion, sale, and marketing of their products, sufficient to render it within the jurisdiction of this Court.  The events and conduct giving rise to the claims in this action constitute interstate commerce, and a significant portion thereof occurred in this District.

## STATEMENT OF FACTS

**A.     DJI Inaccurately Represents the Camera is Suitable for Recording in 4k.**

16.     The DJI Action 2 camera was first sold in the United States in 2021. DJI advertised the Camera as a compact "4K" camera able to record video at up to 120 fps (frames per second). This representation appeared on the box and in marketing materials, including the FAQ section of the DJI website. In addition, DJI advertised the Camera's battery life as being no less than 70 minutes, or up to almost three hours, with the "Front Touchscreen Module" or "Power Module," reasonably implying to consumers that the Cameras could operate for these lengths of time.  Further, as indicated by using

the word "Action" in the name and description of the product, the Cameras were represented as being suitable for capturing "action" scenes in 4k at a frame rate of 120 fps.

17.    In DJI's launch video promoting the Camera, one of the first features mentioned was the Camera's 4K capability:

(voiceover)

"This is DJI Action 2."



(voiceover cont.)

"Action 2 doesn't just challenge design standards; it shatters them. It harnesses size-defying power and adapting shooting for show-stopping footage."

(voiceover at 27 seconds)

"With 4K/120 frame per second capabilities and an ultra-wide field of view, you can capture richer details and see more in every

frame."



18.     The specifications on DJI's website also warranted that the Camera could operate in 4K:

| Video | 4K (4:3): 4096×3072 @ 24/25/30/48/50/60fps |
| | 4K (16:9): 3840×2160 @ 100/120fps |
| | 4K (16:9): 3840×2160 @ 24/25/30/48/50/60fps |
| | 2.7K (4:3): 2688×2016 @ 24/25/30/48/50/60fps |
| | 2.7K (16:9): 2688×1512 @ 100/120fps |
| | 2.7K (16:9): 2688×1512 @ 24/25/30/48/50/60fps |
| | 1080p (16:9): 1920×1080 @ 100/120/200/240fps |
| | 1080p (16:9): 1920×1080 @ 24/25/30/48/50/60fps |

19.     DJI also represented on the product box that the Camera was suitable for shooting video in 4k at a rate of up to 120 frames per second:




**CLASS ACTION COMPLAINT**

9

20.    To justify the price premium charged for the Cameras, DJI highlighted the Cameras' 4k/120 fps capability as an improvement over the less expensive prior model, the DJI Osmo Action Cam.

21.    Amazon.com, through which Plaintiff purchased their Action 2, referenced the Camera's 4K capability on the product page:

- **Footage That Speaks for Itself – Record stunningly smooth 4K/120fps video with richer details than ever before. Action 2's ultra-wide FOV lets you capture more of your surroundings as you explore.**

One of the thumbnail pictures on Amazon's product page also touted the Camera's 4K/120 fps capability:



22.    DJI marketed the Camera as suitable for recording fast-moving, live-action video in 4k/120 fps and used videos of sports, racing cars, skydiving, and other action scenes.  On DJI's website, DJI touts the ability to "[C]apture life on the go.  From parkour to park walks, break the mold with DJI Action 2."

This preceding statement from the DJI website is placed just above one of the representations about the Camera's 4K/120fps specifications. Reasonable consumers, including Klug, were left with the impression that they could capture action scenes in 4k/120fps and obtain clear video despite the speed and motion of the subject of the video.

23.    DJI's representations were misleading and inaccurate. Because of the Defect, the Cameras can only operate for a few minutes in 4K before they overheat and shut down. Not only does DJI not disclose this limitation, but DJI attempts to conceal the Defect by promoting how the Camera's battery life and memory capacity allow long recording times, which are rendered impossible due to the Defect. Specifically, DJI represents that the Cameras have a battery life of up to 70 minutes with just the internal battery.



24.    Further, DJI typically sells the Cameras in a package with either the Front Touchscreen Module or Power Module, both of which can only be used with the

**CLASS ACTION COMPLAINT**

Cameras, and as shown below, DJI represents that these accessories increase battery life to between 160 and 180 minutes:

## Double Down on Your Creativity

Snap on the Front Touchscreen Module and make yourself the center of attention. Designed with vloggers in mind, the front-facing OLED touchscreen and 4-mic Matrix Stereo let you compose videos and capture crisp audio as you narrate your adventures. And when connected, Action 2's battery life is increased to a maximum of 160 minutes when filming. [4]

Some things just click!

Power Module

## A Boost When You Need it Most

Did somebody say power couple? Get more out of your Action 2 with the Power Module. When connected, Action 2 gains a microSD card slot and can film for up to 180 minutes. [4] It's even hot-swappable, so you can keep filming without missing a beat.

DJI represented that the Cameras could record for up to three hours, even though they could only record in 4k for a few minutes before overheating.

25.    DJI reinforces its misrepresentations regarding the maximum operating time of the Camera through its assertions on the box, product literature, and marketing materials by touting the Camera's extensive memory capacity.  In addition to promoting the long battery life, DJI also emphasizes that the Cameras can accept SD memory cards with a capacity of up to 256GB, which are "hot-swappable," allowing consumers to record for hours without interruption by simply swapping out memory cards.  The Defect, however, renders it impossible for consumers to operate the Cameras for anything approaching the hours of recording time promised by DJI when recording video content in 4K.

THE SOBELSOHN LAW FIRM

26.    Despite DJI's representations, the Cameras cannot record in 4K/120 fps in any meaningful sense consistent with the expectations of a reasonable consumer. While the Cameras are marketed for recording sports and scenes involving action in 4k/120fps (hence the name "Action Cam"), the Defect renders the Cameras unsuitable for such uses and non-compliant with the representations and warranties made by DJI.

**B.    The Defect**

27.    When recording in 4k/120fps, the Defect causes the DJI Action 2 to rapidly overheat and shut down, usually in about three minutes -- far less than the hours of recording time promised with the Front Touchscreen Module or Power Module, and the ability to "hot-swap" 256 GB memory cards to allow recording for hours without interruption.  Even at lower frame rates, efforts to record in 4k will cause the Cameras to quickly overheat and shut down without warning, rendering the Cameras useless for recording in 4k.  Once the Cameras overheat, they must be shut down for an extended time, usually, at least 10 minutes, to cool off before they can be used again.

28.    In addition to shutting down without warning, as shown below, the Cameras will become so hot to the touch that they cannot be held with a bare hand without the risk of injury.  Indeed, videos online show that the Cameras, when used in 4k to the point of overheating (which can happen in as little as three minutes), get hot enough to melt a slice of cheese.



**C.    DJI's Purported "Fix" Does Not Work and Decreases the Expected Useful Life of the Cameras.**

29.     The Cameras contain internal software known as "firmware," which causes them to shut down automatically when they reach a specified temperature to prevent damage to delicate electronic components in the Cameras from excessive heat and avoid the risk of fire from exposing the rechargeable lithium batteries to high temperatures.  This automatic shutdown feature is also intended to protect users from injury from coming into contact with the hot surfaces of the Cameras and to comply with product safety regulations and standards.

30.     DJI had actual notice of the Defect shortly after releasing the Cameras for sale in the United States from consumer complaints that the Cameras cannot record content in 4K for meaningful amounts of time before shutting down.  DJI's notice and awareness of the Defect is demonstrated by its release in November 2021 of its first firmware update that allowed the Cameras to operate at higher temperatures before shutting down.  However, even under ideal conditions, the firmware update only increased recording time marginally. As a result, the Cameras still failed to comply with DJI's representations and warranties and remained unsuitable for recording 4K video.

31.     Conceding that the first firmware update failed to correct the Defect, in March of 2022, DJI tried to further mitigate the Defect in its Cameras by offering existing and future customers a plastic case for the Cameras, shown below, which DJI represented would increase recording time before overheating:



DJI Launches DJI Action 2 Magnetic Protective Case

By DJI · 2022-03-24

## Record Longer Than Ever

### DJI Action 2 Magnetic Protective Case

The DJI Action 2 Magnetic Protective Case helps prevent damage to the Camera Unit from impacts, scratches, and abrasions. An additional case is compatible with the Front Touchscreen Module and Power Module. Comprised of a heat-resistant polymer, the Magnetic Protective Case also helps reduce surface temperature to optimize video recording by activating a heat control solution that increases recording length under normal conditions.

### Technical Principles

The DJI Action 2 Camera Unit is made of metal material for fast heat dissipation of internal components, causing it to feel hot to the touch after long recording times. DJI Action 2 has a built-in temperature threshold system that automatically sends a prompt and stops recording when the camera temperature reaches a set value. The Magnetic Protective Case is made of a heat-resistant polymer to make the Camera Unit less restricted by temperature, allowing extended recording times under normal conditions.

Amazon's product page also describes the case as increasing recording time:

- **Magnetic Protective Case – Prevents damage from impact, scratches, and abrasions. Heat resistant to increase recording length under normal circumstances.**

32.     The Magnetic Protective Case was intended to protect consumers from the excess heat generated by the Defect and allow the Cameras to operate at higher temperatures before shutting down.  However, DJI's tests confirm that the actual effect

on recording due to the case was minimal and certainly not enough to render the Cameras suitable for recording in 4k/120 fps as represented by DJI.[3]

33.    Not only do these countermeasures not increase the 4k/120 fps recording time to comply with DJI's representations and warranties and allow the cameras to record in 4k/120fps in any meaningful sense, but the slight increase in recording time attributable to the countermeasures comes at the expense of long-term durability of the Cameras.  One of the reasons the software in the Cameras shuts the Cameras down when the operating temperature exceeds a certain threshold is that excessive heat can damage and cause premature wear to the delicate electronic components in the Cameras.  By changing the software to allow the Cameras to run at higher temperatures, DJI has marginally increased recording time but done so at the expense of the long-term durability of the Cameras.  Because the Cameras now run hotter before shutting down, they can be expected to fail more quickly.

34.    Moreover, the Protective Case, while doing nothing to address the Defect or adequately extend 4k recording time, makes the Cameras much larger than they were designed or represented to be, eliminating the compact size, which was an essential basis of the bargain for consumers in purchasing the Cameras and paying a price premium for the Cameras.

**D.    DJI's Knowledge of the Defect and Misrepresentations to Klug and the Class**

35.    Although DJI had notice of its Defect and the Cameras' inability to perform at their represented specifications since the Cameras were first sold to Plaintiff and other consumers in the United States - as evidenced by their multiple attempts to fix,

---

[3] *See* DJI temp test chart: https://store.dji.com/guides/dji-action-2-magnetic-protective-case/.

mitigate, or otherwise address these deficiencies as discussed above -- DJI omitted any reasonable disclosure that the Cameras are materially unsuitable for recording in 4k because the Defect will cause them to overheat and shutdown prematurely. Instead, DJI has continued to market the Cameras as suitable for recording in 4k at frame rates as high as 120 frames per second.

36.    Nor has DJI disclosed that its purported software "fix" has come at the expense of long-term durability. If repeatedly and regularly used to the point of overheating, for example, by recording just a few minutes of 4k video, the Cameras will have a shorter expected useful life.

37.    Because of DJI's representation that the Cameras are capable and suitable for recording video in 4k at frame rates as high as 120 frames per second, they are sold at a substantial price premium to other compact cameras, including other non-4k cameras sold by DJI and its competitors.

38.    Had DJI disclosed the Defect and the resulting limitations on the capability of the Cameras that renders them incapable of performing as represented, Plaintiff and other consumers would not have purchased them or would have paid less for them. As such, Plaintiff and the Class are entitled to refunds or the price premium they paid for a 4K/120 fps camera.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action on behalf of themself and all other members of a class consisting of all purchasers of the Cameras (including purchasers who purchased the Cameras in a package with the Front Touchscreen Module or the Power Module) in the United States (the "Class"). Excluded from the Class are Defendant and any person, firm, trust, corporation, or other entity related to or affiliated with Defendant, including, without limitation, persons who are directors of DJI.

THE SOBELSOHN LAW FIRM

**CLASS ACTION COMPLAINT**

40.     The Class is composed of at least thousands of persons nationwide and is sufficiently numerous for class treatment.  The joinder of all Class members individually in one action would be impracticable, and the disposition of their claims in a class action will substantially benefit the parties and the Court.  Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse to the interests of other Class members.

41.     This dispute raises questions of law and fact common to all Class members.  These common questions predominate over questions that arise on an individual basis for Class members.  The common questions of law and fact include, without limitation:

(a)     Whether DJI's representations, omissions, and conduct regarding the Cameras were misleading or false;

(b)     Whether DJI's representations and conduct were likely to deceive consumers into believing that the Cameras were suitable for recording in 4k, including in 4k/120fps;

(c)     Whether DJI sought to conceal the existence of the Defect;

(d)     Whether the Defect constitutes a manufacturing or design defect;

(e)     Whether the Defect constitutes a breach of DJI's warranties and representations;

(f)     Whether a reasonable consumer would be misled by DJI's representations that the Cameras could record in 4k, including in 4k/120fps;

(g)     Whether DJI violated California Business & Professions Code §17200, et seq., §17500, et seq., and California Civil Code §1750, et seq., and §1792, et seq.;

(h)    Whether DJI's actions as described herein violated the consumer protection laws of Missouri and other states;

(i)    Whether the members of the Class have been injured by DJI's conduct;

(j)    Whether the members of the Class have sustained damages and whether DJI was unjustly enriched at their expense;

(k)    The proper measure and appropriate formula to be applied in determining damages and restitution for the Class; and

(l)    Whether the members of the Class are entitled to injunctive relief.

42.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced and competent in the prosecution of class action litigation.

43.    A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted.  Plaintiff does not anticipate any difficulties in managing this class action.

44.    A class action will permit many similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment also will permit the adjudication of relatively small claims by many Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

45.    If a Class or general public action is not permitted, Class members will continue to suffer losses, and DJI's misconduct will continue without proper remedy.

DJI has acted and refused to act on grounds generally applicable to the entire Class, making final injunctive relief or corresponding declaratory relief appropriate for the Class.

## FIRST CAUSE OF ACTION

### Unlawful, Deceptive, and Unfair Business Acts and Practices

### in Violation of Cal. Bus. & Prof. Code §17200, et seq.

46.    Each of the above allegations is incorporated herein.

47.    DJI's misrepresentations and omissions as to the 4k capability of the Cameras, as well as its failure to reasonably disclose the Defect, and wrongful warranty practices, were disseminated and directed from the United States headquarters of DJI in Los Angeles. Therefore, based upon the choice of law rules applied in this District, Plaintiff preliminarily identifies the substantive laws of California as the most likely to apply to the errors and omissions complained of herein.

48.    The acts, practices, failures, and omissions of fact by DJI described above, and DJI's misleading marketing, constitute unlawful and unfair business acts and practices as well as false and deceptive advertising within the meaning of California Business & Professions Code §17200, et seq.

49.    DJI engaged in unfair and deceptive business acts or practices by selling Cameras containing a Defect that negatively and materially impacted the Camera's merchantability and fitness for recording video in 4k, including in 4k/120fps.

50.    DJI's unlawful, unfair, and deceptive business acts and practices present a continuing threat to Plaintiff, Class members, and the general public because DJI has refused to publicly acknowledge the Defect, correct its wrongdoing, recall the Cameras, or provide compensation for the damages it has caused to consumers.

**CLASS ACTION COMPLAINT**

51.     Pursuant to California Business & Professions Code §17203, Plaintiff, on behalf of themself, the other Class members, and the general public, seeks an order of this Court enjoining DJI from withholding information regarding the Defect and continuing to market the Cameras as being capable of recording in 4k, including in 4k/120fps.  Plaintiff and Class also seek restitution of any monies wrongfully acquired or retained by DJI and disgorgement of DJI's ill-gotten gains.

**SECOND CAUSE OF ACTION**

**Untrue and Misleading Advertising in Violation**

**of Cal. Bus. & Prof. Code §17500, et seq.**

52.     Each of the above allegations is incorporated herein.

53.     California Business & Professions Code §17500 prohibits deceptive practices concerning representations to induce customers to purchase consumer products such as the Cameras.

54.     DJI's acts, practices, misrepresentations, and omissions alleged herein were intended to, and did, induce the consuming public to purchase the Cameras and violated and continue to violate Business & Professions Code §17500, in that DJI caused advertisements for its Cameras to be placed before the general public, even though the Cameras did not conform to the advertisements.

55.     To redress DJI's misconduct, Plaintiff, the Class, and the general public are entitled to injunctive and equitable relief, including disgorgement and restitution of DJI's ill-gotten gains.

**THIRD CAUSE OF ACTION**

**Unlawful Practice in Sale of Consumer Goods in Violation of**

**CA Consumers Legal Remedies Act, Cal. Civ. Code §1750, et. seq.**

56.     Each of the above allegations is incorporated herein.

57.     The Cameras described above were bought by Plaintiff and other consumers similarly situated, primarily for personal, family, or household purposes. Prior to Plaintiff's purchase of the Camera, DJI violated California Civil Code §1770 in the following respects:

(a)     In violation of California Civil Code §1770(a)(5), DJI failed to disclose that the Cameras were incapable of being used as represented;

(b)     In violation of California Civil Code §1770(a)(7), DJI failed to disclose that the Cameras were not of a particular standard, grade, or quality, specifically that they could not record in high definition for any reasonable amount of time;

(c)     In violation of California Civil Code §1770(a)(9), Despite the existence of the Defect, DJI advertised the Cameras as able to record in 4k, including in 4k/120 fps, to sell the Cameras to consumers at an inflated price.

58.      The foregoing violations resulted from DJI's concealment from Plaintiff and the Class of the Cameras' actual characteristics, uses, and qualities.  DJI's misrepresentations and omissions resulted in the sale of the Cameras to Plaintiff and other consumers similarly situated.  Had DJI not engaged in such misconduct, Plaintiff and the Class would not have purchased the Cameras or would have paid less for the Cameras.

59.     On April 12, 2023, Plaintiff's counsel sent a letter to DJI by certified mail, return receipt requested, that contained a notice of DJI's violation of the California Consumers Legal Remedies Act and a demand for remedy by DJI.  A true and correct copy of the letter is attached to this Complaint as Exhibit "A," the contents of which are incorporated herein by reference.  The letter notified DJI of the violations of the California Civil Code that resulted in the sale of the defective Cameras to Plaintiff, and all others similarly situated, and demanded that DJI remedy the violations.

60.    In this complaint, Plaintiff limits their claims under the CLRA to injunctive relief.  However, if more than 30 days pass from DJI's receipt of the notice letter and DJI fails to remedy its violations of the CLRA, Plaintiff will amend their complaint to add claims for damages.

61.    Pursuant to California Civil Code section 1780, Plaintiff, on behalf of themself, the other Class members, and the general public, seek an order of this Court enjoining DJI from continuing the unlawful acts and practices regarding the Cameras.

**FOURTH CAUSE OF ACTION**

**Violation of the Song-Beverly Consumer Warranty Act**

**(Cal. Civ. Code §1792 et seq.)**

62.    Each of the above allegations is incorporated herein.

63.    Under the Song-Beverly Consumer Warranty Act, DJI impliedly warranted to Plaintiff that the Cameras were "merchantable" and fit for the purpose for which they were purchased.  Cal. Civ. Code §§ 1791.1, 1792, and 1792.1.

64.    The implied warranty was breached, however, when as set forth above, the Cameras were sold with a Defect undiscoverable by the Plaintiff and the Class members at the time of sale.  As such, the Cameras were rendered unmerchantable by the existence of the Defect itself rather than when Plaintiff and the Class members subsequently discovered the Defect.  Had the Defect been known, the Cameras would have been unsalable as cameras capable of recording in 4k, including in 4k/120fps.  In addition, under the Song-Beverly Consumer Warranty Act, DJI must make available replacement parts to effect repairs during the warranty period and repair defects within 30 days. Cal. Civ. Code §1793.2(a)(3) and (b).

65.    DJI violated the Song Beverly Consumer Warranty Act by failing to provide the effective repair or replacement of the defective Cameras within 30 days.

THE SOBELSOHN LAW FIRM

As provided by the Song Beverly Consumer Warranty Act, Plaintiff, on their own behalf and on behalf of the Class, seeks reimbursement of the cost of the Cameras as well as an award of attorneys' fees.

**FIFTH CAUSE OF ACTION**

**Violation of Magnuson-Moss Act (15 U.S.C. §2301 et seq.)**

66.     Each of the above allegations is incorporated herein.

67.     Plaintiff and the Class are consumers as defined in 15 U.S.C. §2301(3).

68.     DJI is suppliers and warrantors as defined in 15 U.S.C. §2301(4)(5).

69.     The Cameras are consumer products as defined in 15 U.S.C. §2301(1).

70.     By breaching its implied warranties and express written warranties concerning the Cameras, DJI violated the rights and protections due the Plaintiff and the Class under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 et seq., thereby damaging Plaintiff and the Class.

**SIXTH CAUSE OF ACTION**

**Violation of the Missouri Merchandising Practices Act (MMPA)**

**(Mo. Rev. Stat. §407.010 et seq.)**

(Brought in the Alternative on Behalf of the Missouri Subclass)

71.     Each of the above allegations is incorporated herein.

72.     The MMPA provides that it is unlawful to "act, use or employ. . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce. . . ." Mo. Rev. Stat. § 407.020.1.

73.     DJI stated that the Cameras could record video in 4k, including in 4K/120 fps.  This statement is false and misleading because the Cameras can only record in 4K/120 fps for a few minutes before the Cameras overheat and shuts down.

74.     DJI's conduct, as described above, constitutes the act, use, or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices, and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of merchandise in trade or commerce.  DJI's misrepresentations and omissions are material in that they relate to matters important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff.

75.     In violation of the MMPA, DJI employed fraud, deception, false promise, misrepresentation, and/or the knowing concealment, suppression, or omission of material facts in its sale and advertisement of the Cameras

76.     Plaintiff purchased their Camera for personal, family, or household purposes.  Plaintiff suffered ascertainable losses due to DJI's violation of the MMPA.

77.     Had Plaintiff known the truth about the Cameras, they would not have purchased the Camera or would not have paid as much for the Camera.  Accordingly, Plaintiff and the Class are entitled to damages under the MMPA.

### SEVENTH CAUSE OF ACTION

### Unjust Enrichment

78.     Each of the above allegations is incorporated herein.

79.     Plaintiff and the Class conferred a benefit on DJI by purchasing the Cameras.  DJI had knowledge that this benefit was conferred upon it.

80.     Because of its wrongful acts and omissions, DJI could charge a higher price than the Cameras' actual value.  By setting this unwarranted price premium for the

Cameras, DJI obtained money that rightfully belongs to Plaintiff and the Class and enriched itself at the expense of Plaintiff and the Class.

81.     DJI was and continues to be unjustly enriched at the expense of Plaintiff and Class members.

82.     DJI's retention (without an offsetting return payment) of the benefit that Plaintiff and Class members conferred upon it would be unjust and inequitable.  Plaintiff and the Class are entitled to disgorgement of this benefit in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

A.     Declaring that this action is properly maintainable as a class action and certifying Plaintiff as Class representative;

B.     Awarding damages in an amount to be determined at trial;

C.     Awarding restitution and disgorgement as a result of DJI's unfair business practices and untrue and misleading advertising;

D.     Enjoining the defendants from continuing their illegal practices set out above;

E.     Awarding pre and post-judgment interest;

F.     Awarding attorney fees, expenses, and costs; and

G.     Providing such other and further relief as this Court may deem just and proper.

Dated: April 12, 2023                    Respectfully submitted,

*Daniel E. Sobelsohn*
_____
Daniel E. Sobelsohn

1
2
3
daniel@sobelsohnlawfirm.com
THE SOBELSOHN LAW FIRM
16027 Ventura Blvd., Suíte 502
Ensino, CA 91436
Phone: (818) 722-8995

4
5
6
7
8
Robert I. Lax (to be admitted *pro hac vice*)
rlax@lax-law.com
Lax LLP
380 Lexington Ave.
31st Floor
New York, NY 10168
Phone: (212) 818-9150

9
10
11
12
Adam R. Gonnelli
adam@arglawoffice.com
Law Office of Adam A. Gonnelli LLC
707 Alexander Rd., Building 2, Suite 208
Princeton, NJ 08540
Phone: (917) 541-7110

13
Attorneys for Plaintiff

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1  Plaintiff demands a trial by jury.

2  Dated: April 12, 2023                    Respectfully submitted,

3

4                                           *Daniel E. Sobelsohn*
                                            _____
                                            Daniel E. Sobelsohn
5                                           daniel@sobelsohnlawfirm.com
                                            THE SOBELSOHN LAW FIRM
6                                           16027 Ventura Blvd., Suite 502
                                            Encino, CA 91436
7                                           Phone: (818) 722-8995

8                                           Robert I. Lax (to be admitted *pro hac vice*)
                                            rlax@lax-law.com
9                                           Lax LLP
                                            380 Lexington Ave.
10                                          31st Floor
                                            New York, NY 10168
11                                          Phone: (212) 818-9150

12

13                                          Adam R. Gonnelli
                                            adam@arglawoffice.com
14                                          Law Office of Adam A. Gonnelli LLC
                                            707 Alexander Rd., Building 2, Suite 208
15                                          Princeton, NJ 08540
                                            Phone: (917) 541-7110
16

17                                          Attorneys for Plaintiff

18

19

20

21

22

23

24

25

26

27

28